# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA
### PITTSBURGH DIVISION

| | |
|---|---|
| SHAWN KING, | ) |
| | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 2:24-cv-00484 |
| | ) |
| vs. | ) |
| | ) |
| SUPERINTENDENT TINA WALKER, | ) Christy Criswell Wiegand |
| SCI FAYETTE SUPERINTENDENT; | ) United States District Judge |
| KEITH MATIYASIC, UNIT | ) |
| MANAGER; RHONDA HOUSE, | ) |
| FACILITY GRIEVANCE | ) Christopher B. Brown |
| COORDINATOR; KRISTINA | ) United States Magistrate Judge |
| HALUSKA, LIBRARIAN; DOCTOR | ) |
| LAUREL HARRY, SECRETARY PA | ) |
| DOC; JOSEPH RUSNAK, SECURITY | ) |
| CAPTAIN; OFFICER BURKHOLDER, | ) |
| SERGEANT DEPASQUALE, | ) |
| OFFICER HOLLOWAY OR | ) |
| HOLLYWOOD, OFFICER DIX, | ) |
| BRITTANY KIMMEL, EDUCATION | ) |
| PRINCIPAL; SANDRA CALLOWAY, | ) |
| ACCOUNTING SUPERVISOR; | ) |
| ASHLEY TRAFFICANTE, | ) |
| MAILROOM SUPERVISOR; | ) |
| SERGEANT PEARCE, LISA | ) |
| DUNCAN, PSYCHOLOGY | ) |
| MANAGER; JAMES BRIGHT, | ) |
| MEDICAL SUPERVISOR; OFFICER | ) |
| REGINA; "DOE", CEO PSYCHOLOGY | ) |
| CORPORATE ENTITY COMPANY; | ) |
| AND JANE OR JOHN DOE, CEO | ) |
| WELLPATH, INC. MEDICAL | ) |
| PROVIDER, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION ON MOTION TO DISMISS, ECF NO. 104, AND MOTION FOR SPOLIATION SANCTIONS, ECF NO. 118**

1

**Christopher B. Brown, United States Magistrate Judge**

Plaintiff, Shawn King ("King"), proceeding pro se, is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"). He brings this case against DOC officials, corrections officers, and other DOC employees concerning his incarceration at SCI-Fayette. ECF No. 87.

On February 20, 2025, King filed a sprawling 52-page handwritten Third Amended Complaint ("TAC"), comprised of over 300 paragraphs. *Id.* He raises a myriad of claims spanning a three-year time frame from 2022 through 2025.

Pending is the Corrections Defendants' motion to dismiss the TAC, with brief in support, ECF Nos. 104 and 105, to which King has filed a response and attached 45 pages of exhibits, ECF Nos. 113 and 113-1. In addition, King has filed a motion for spoliation sanctions, ECF No. 118, to which the Corrections Defendants have responded. ECF No. 124. Both motions are fully briefed and ripe for disposition.[1]

After reviewing the motion to dismiss and the opposition to it, as well as relevant case law, it is respectfully recommended the motion be granted in part and denied in part as follows:

---

[1] This matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).

| Claims Sought To Be Dismissed | Against | Recommendation |
|---|---|---|
| Official Capacity Claims | All Corrections Defendants | Motion to dismiss be granted and § 1983 official capacity claims for money damages be dismissed **with** prejudice as such claims are barred by the Eleventh Amendment.  It is further recommended that leave to amend be denied. |
| Personal Involvement of Several Corrections Defendants | Bright, Harry, Rusnak, and Pearce | Motion to dismiss be granted as to Defendants Bright, Harry, Rusnak, and Pearce as the TAC is void of specific factual allegations.  It is recommended TAC be dismissed **without** prejudice and King be granted leave to amend. |
| | Holloway, Regina, Burkholder, and Dix | Motion to dismiss be granted as to Defendants Holloway, Regina, Burkholder, and Dix as the TAC is void of specific factual allegations.  It is recommended TAC be dismissed **without** prejudice and King be granted leave to amend. |
| | Walker | Motion to dismiss be granted to the extent King is attempting to hold Superintendent Walker |

3

|  |  | liable as a supervisor. It is recommended the TAC be dismissed **without** prejudice and King be granted leave to amend. |
|  | Kimmel and House | Motion to dismiss be denied. |
| First Amendment Claims – Right of Access to Courts | Haluska, Depasquale, Calloway, and Holloway | Motion to dismiss be granted as King has failed to plead Defendants' conduct prevented him from pursuing a non-frivolous or arguable claim. It is recommended the TAC be dismissed **without** prejudice and King be granted leave to amend. |
| First Amendment Claims - Retaliation | Kimmel and House | Motion to dismiss be denied as King has implicated Kimmel and House denied his grievances in retaliation for his protected activity. |
|  | Bright, Harry, Rusnak, and Pearce | The motion to dismiss be granted as the TAC fails to include any allegations identifying the specific adverse actions taken by these Defendants against King. It is recommended the TAC be dismissed **without** prejudice and King be granted leave to amend. |

4

| | Holloway, Regina, Burkholder, Dix, Haluska, and Trafficante | The motion to dismiss be granted as the TAC fails to include any allegations showing a causal link between King's protected activity and these Defendants' knowledge of his protected activity.  It is recommended the TAC be dismissed **without** prejudice and King be granted leave to amend. |
|---|---|---|
| Fourth Amendment Claims | Sgt. DePasquale | The motion to dismiss be granted and King's Fourth Amendment claims be dismissed **with** prejudice and leave to amend be denied as futile. |
| Eighth Amendment – Conditions of Confinement Claims | All Corrections Defendants | The motion to dismiss be granted as the TAC lacks the requisite specificity to meet minimum pleading requirements to allege Eighth Amendment conditions of confinement claims.  It is recommended the TAC be dismissed **without** prejudice and King be granted leave to amend. |
| Eighth Amendment – Failure to Protect Claims | Dix, Burkholder, Regina, and unnamed Corrections Defendants | The motion to dismiss be granted as the TAC does not allege facts to support a finding that Dix, Burkholder, or Regina, or any other Corrections Defendant, were aware of |

| | | any threats to King or disregarded a substantial risk to his safety.  It is recommended the TAC be dismissed **without** prejudice and King be granted leave to amend. |
|---|---|---|
| Fourteenth Amendment Due Process Claims | All Corrections Defendants | The motion to dismiss be granted and King's Fourteenth Amendment due process claims be **with** prejudice under the single source rule.  It is further recommended leave to amend be denied as futile. |

In sum, it is recommended King be granted leave to file a Fourth Amended Complaint that meets the standards of Federal Rule of Procedure 8 and cures the pleading deficiencies as noted in this Report and Recommendation.  King should be instructed he cannot include any claim in his Fourth Amended Complaint that has been dismissed **with** prejudice.

Additionally, it is recommended the motion for spoliation sanctions be denied as King has not met his burden with respect to his request for spoliation sanctions.

## II.    Report

### A.    Factual Background and Procedural History

On March 31, 2022, King was transferred from SCI-Houtzdale to SCI-Fayette.  ECF No. 87, ¶ 26.  He contends the Corrections Defendants violated a

6

number of his constitutional rights, including engaging in a "pattern of retaliation" in response to his constitutionally protected activity.

King initiated this prisoner civil rights case on March 29, 2024, by submitting to the Clerk's Office a 26-page complaint, naming approximately 25 DOC officials and various employees as defendants.  ECF Nos. 1, 9.  At the time King commenced this lawsuit, he was incarcerated at SCI-Fayette.[2]

The Complaint was "lodged" as it did not come with the filing fee or a motion for leave to proceed in forma pauperis ("IFP motion").  About a month later, on April 29, 2024, King filed an IFP motion, ECF 2, which was granted on May 7, 2024, ECF No. 7, and the Complaint filed.  ECF No. 8.  Before the Court received service documents from King, he filed two supplements to the Complaint.  ECF Nos. 9 and 18.  In August 2024, he then sought leave to file another supplement to his complaint, ECF No. 38.  That request was denied and King was directed to file one stand-alone Amended Complaint.  ECF No. 39.

On September 11, 2024, King filed an Amended Complaint, ECF No. 44, and simultaneously filed a motion for leave to file a "final supplement."  ECF No. 45. The motion for leave to file a "final supplement" was denied, but King was granted leave to file one stand-alone Second Amended Complaint.  ECF Nos. 48 and 56.  On February 28, 2025, King filed his Second Amended Complaint.  ECF No. 59.

---

[2]    In February 2026, King notified the Court he had been transferred from SCI-Fayette to SCI-Phoenix.  ECF No. 141.

About two months later, on May 6, 2024, before service was effectuated, King filed a Motion to Amend Parties. ECF No. 71. The motion was denied without prejudice as it was unclear whether King was seeking to add new defendants or terminate existing defendants. ECF No. 72. King was advised to the extent he was seeking to terminate a previously named defendant, he should file a motion requesting that party be dismissed from the lawsuit and to the extent he wished to add new defendants or substitute previously named defendants, he was granted leave to file a Third Amended Complaint. ECF Nos. 72 and 82.

On July 1, 2025, King filed a TAC, which is far from a model of clarity. It spans 52 single-spaced handwritten pages and contains over 300 paragraphs. ECF No. 87. The TAC remains King's operative complaint.[3] In it, seventeen individuals are named as defendants: FCI Fayette Superintendent Tina Walker, DOC Secretary Doctor Laurel Henry, Security Captain Joseph Rusnak, Unit Manager Keith Matiyasic, Facility Grievance Coordinator Rhonda House, Education Principal Brittany Kimmel, Accounting Supervisor Sandra Calloway, Mailroom Supervisor Ashley Trafficante, Sergeant DePasquale, Sergeant Pearce, Psychology Manager Lisa Duncan, Medical Supervisor James Bright, Officer Holloway, Officer Regina, Librarian Kristina Haluska, Officer Burkholder, and Officer Dix (collectively, the "Corrections Defendants"), and two Doe Defendants: CEO Psychology Corporate Entity Company ("Doe") and CEO Wellpath Inc. Medical

---

[3]    "In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). "Thus, the most recently filed amended complaint becomes the operative pleading." *Id.*

Provider:  Jane or John Doe.  ECF No. 87, ¶¶ 9-27.  Each defendant is sued in their individual and official capacities.  *Id.* at 3.

As noted above, the TAC is long and in parts confusing, if not incomprehensible.  For example, factual allegations are dispersed throughout the document, often the claims are against "the Defendants" and discrete defendants or the actions taken by an individual defendant are not identified, and the causes of action are not set forth in separate paragraphs or sections.  As far as the undersigned can discern, the allegations in the TAC are intended to make out causes of action under 42 U.S.C. § 1983.  As self-described by King, the TAC,

> details and alleges Defendants pattern of retaliation for his participation in protected conduct, numerous instances of spoliation, censorship, illegal seizures, withholding of PA DOC authorized outside purchases, interference with privileged communications, substandard medical and psychiatric care.  The conditions of confinement component of constant high intensity, cold air, even during winter months, and the customary disregard for PA DOC policies and the abdication of responsibilities and dereliction of duties by SCI-Fayette prison officials, including refusal to protect inmate and denial of separations from inmates who pose a substantial imminent threat to plaintiffs safety and life.

ECF No. 113 at 4.  According to King, he raises six claims in his TAC:

9

1. Failure-to-protect
2. FIRST AMENDMENT Violations
   a. Censorship/Mail Interference
   b. Retaliation
   c. Access-to-Courts
   d. SPOLIATION
3. Conditions of Confinement
4. FOURTH AMENDMENT Seizure/Destruction of Property
5. Due Process Claim Deprivation of Property
6. Substandand Medical/Psychiatric Care

ECF No. 113 at 19. As relief, King seeks declaratory judgment, preliminary, and permanent injunction ordering the SCI Fayette prison officials to cease their threats toward him, compensatory and punitive damages, recovery of costs of suit, and any other appropriate relief. ECF No. 87 at 45; ECF No. 113 at 21.

The Corrections Defendants filed the instant motion arguing there is no substance to the TAC and move to dismiss under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 104. King filed a response in opposition, ECF No. 113, and the matter is now ripe for disposition.

The Court has federal question jurisdiction as King's claims are brought under 42 U.S.C. § 1983.

## B.      Standard of Review – Fed. R. Civ. P. 12(b)(6)

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled. A complaint must contain a "short and plain statement of the claim

showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), and can be dismissed for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court conducts a three-step inquiry in evaluating a motion to dismiss under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), *as amended* (June 6, 2011). First, the Court identifies "the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the Court accepts all the plaintiff's well-pleaded factual allegations as true and "construe[s] the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). But the Court disregards "legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). Third, the Court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

When a plaintiff, like King here, is proceeding pro se, the complaint is "to be liberally construed," and "however inartfully pleaded, must be held to less stringent

11

standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 93-94 (2007). That said, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996)). And, "[w]hile a litigant's pro se status requires a court to construe the allegations in the complaint liberally, . . . a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Judging the sufficiency of a pleading "is a context-dependent exercise." *Garrett v. Wexford Health*, 938 F.3d 69, 93 (3d Cir. 2019) (quoting *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010)). At a minimum, however, the pleading must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). Accordingly, a complaint must identify "discrete defendants and the actions taken by these defendants[.]" *Garrett*, 938 F.3d at 93 (citation omitted). Dismissal under Rule 8(a) is appropriate when the "complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Muhammad v. U.S. States Bd. of Governors Postal Sys.*, 574 F. App'x 74, 74 (3d Cir. 2014) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

12

## C.      Analysis

### 1.      The TAC Violates Rule 8(a)(2)

The Corrections Defendants initially move to dismiss the TAC on the grounds it fails to meet the pleading standards under Federal Rule of Civil Procedure 8.  As noted above, Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Put lightly, the TAC is nowhere near a "short and plain statement."

The TAC is unwieldy with over 300 paragraphs spread out over 52 pages and has only grown more so in its third iteration since King's original pleading.  But striking the TAC will only delay resolution as the undersigned recognizes striking the TAC for a Rule 8 violation and then directing King, a pro se plaintiff, to file again would only serve to "unnecessarily proliferate the pleading stage and postpone a trial on the merits[.]"  5 C. Wright & A. Miller, Federal Practice and Procedure Civ. § 1281 (4th ed.).  While King's TAC is unnecessarily complicated and verbose, dismissal is not recommended on this basis. Rather, the undersigned will wade through the TAC to evaluate the sufficiency of the allegations.

### 2.  The Motion to Dismiss Under Rule 12(b)(6), ECF No. 104

Corrections Defendants next argue the TAC should be dismissed on various grounds: (1) the Eleventh Amendment bars any claims against a Corrections Defendant in their official capacity; (2) the TAC fails to adequately allege personal involvement of several Corrections Defendants; (3) the TAC fails to state a First Amendment claim for a violation of the right to access the courts; (4) the TAC fails

13

to state a First Amendment retaliation claim against several Corrections Defendants; (5) the TAC fails to state a Fourth Amendment claim; (6) the TAC fails to state an Eighth Amendment conditions of confinement claim; (7) the TAC fails to state an Eighth Amendment failure to protect claim; and (8) the TAC fails to state a Fourteenth Amendment due process claim. ECF No. 105.[4] Each of these arguments is addressed in order.

### a.    Eleventh Amendment:  Official Capacity Claims

The Corrections Defendants move to dismiss claims against them in so far as they are made against them in their official capacities. ECF No. 105, at 8. The undersigned agrees with the Corrections Defendants and recommends all claims against defendants in their official capacities be dismissed.

Official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent[.]" *Monell v. Dep't of Soc. Serv. of City of New York,* 436 U.S. 658, 691 n.55 (1978). In an official-capacity suit, the entity of which the officer is an agent is the real party in interest. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985). As such, claims against state officials in their official capacities for damages are treated as suits against the state and are barred by the Eleventh Amendment. *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Hum. Servs.,* 730 F.3d 291, 318 (3d Cir. 2013).

---

[4]    King's claims for substandard medical /psychiatric care are raised against the Doe defendants, which remain unidentified and unserved.

King acknowledges the Eleventh Amendment "disallows monetary damages against Defendants in their official capacity," but he argues the Eleventh Amendment does not preclude his claims because is seeking "injunctive relief to force the State or State Agency for whom they officials work to obey the Constitution." ECF No. 113 at 21. The claims in the TAC arise from King's incarceration at SCI-Fayette. A prisoner's transfer or release from the facility complained of, as is the case here with King transferred to SCI-Phoenix, generally moots equitable and declaratory claims. *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003), *as amended* (May 29, 2003). Such claims are not mooted when a challenged action is (1) too short in duration to be fully litigated before its cessation or expiration; and (2) there is a reasonable likelihood that the same complaining party would be subject to the same action again. *Id.*

The record reflects King was transferred to SCI-Phoenix in February 2026, after briefing on this motion concluded. ECF No. 141. There is no indication in the record King is reasonably likely to be transferred back to SCI-Fayette. Therefore, it is recommended the motion to dismiss be granted with prejudice and all claims against the Corrections Defendants in their official capacities be dismissed and leave to amend be denied. *See Sutton*, 323 F.3d at 249 (holding equitable and declaratory claims were moot where prisoners who challenged a policy on access to religious materials were no longer confined at the facility).

15

### b.  The TAC Fails to Adequately Allege Personal Involvement of Several Corrections Defendants[5]

To prevail on a Section 1983 claim, a plaintiff must prove a defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right. *Gould v. Wetzel*, 547 F. App'x 129 (3d Cir. 2013).  "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207).  Absent specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See, e.g., Mearin v. Swartz*, 951 F. Supp. 2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims under Rule 12(b)(6) because plaintiffs failed to set forth sufficient facts to establish certain defendants had played an affirmative part in the alleged Eighth Amendment violation).

The Corrections Defendants move to dismiss the claims against Defendants Bright, Harry, Rusnak, Pearce, Holloway, Regina, Burkholder, Dix, Walker, Kimmel, and House for lack of personal involvement.  ECF No. 105 at 12-13.  The arguments are addressed in turn.

---

[5]    The Corrections Defendants are not at this time asserting a lack of personal involvement argument for Corrections Defendants Trafficante, Calloway, Matiyasic, Depasquale, and Haluska. *See* ECF No. 105, n. 2.

### i.  Defendants Bright, Harry, Rusnak, and Pearce

While Defendants Bright, Harry, Rusnak, and Pearce are named in the caption of the TAC, the TAC is void of any specific factual allegations against these four defendants.  Thus, it is recommended King's claims against Defendants Bright, Harry, Rusnak, and Pearce be dismissed without prejudice and King be granted leave to amend.

### ii.  Defendants Holloway, Regina, Burkholder, and Dix

The TAC alleges Defendant Holloway violated King's "First Amendment rights by removing and discarding [King's] initial 1983 complaint and exhibits," ECF No. 87 at 35, and King suffered "[i]ncalculable mental loss . . . by exposing him to and being subjected to fear, uncertainty, threats from prison officials Officers Dix, Burkholder, and Regina[.]"  *Id*. at 43.  Such conclusory statements without any specificity is not sufficient to establish personal liability.  Thus, it is recommended King's claims against Defendants Holloway, Regina, Burkholder, and Dix be dismissed without prejudice and King be granted leave to amend.

### iii.  Defendant Walker

King describes Walker as the "Superintendent and serves as the 'Facility Manager" of SCI-Fayette.  ECF No. 87 at 2.  According to King, Superintendent Walker was dismissive of his numerous grievances and questioned whether he was working with his unit staff.  *Id*., ¶¶ 135-143.  According to King,

> Defendant Walker is largely disinterested and
> unconcerned with the behavior and actions of underlings;
> believing they (staff) can do no wrong and do not do so.
> Ms. Walker defends subordinate prison officials
> regardless of allegations without investigation and does
> not discipline them.

ECF No. 87, at 15, ¶¶ 142-43.

To the extent King is attempting to hold Superintendent Walker liable as a supervisor, his allegations fail. Liability under § 1983 cannot be predicated on a respondeat superior theory. *See Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. 2022) (per curiam). Additionally, the mere fact that a defendant is a "supervisor" or has supervisory authority, standing alone, cannot support liability under § 1983. *See Capone v. Marinelli*, 868 F.2d 102, 106 n.7 (3d Cir. 1989).

The Court of Appeals for the Third Circuit has identified two general instances in which the conduct of a supervisor or the policies/procedures of a supervisor may constitute personal involvement, thus warranting a finding of individual supervisory liability for a constitutional tort. First, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)). Second, supervisors may be liable if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional

18

harm." *Coulston v. Superintendent Houtzdale SCI*, 651 F. App'x 139, 143 (3d Cir. 2016) (quoting *A.M. ex rel. J.M.K.,* 373 F.3d at 586).

Here, the TAC has no allegations indicating Defendant Walker participated in violating King's rights, directed others to violate his rights, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct.  Nor are there any allegations Superintendent Walker established or maintained a policy, practice, or custom which directly caused King constitutional harm.

Thus, it is recommended King's claims against Defendant Walker be dismissed without prejudice and King be granted leave to amend.

### iv.  Defendants Kimmel and House

The TAC describes Defendant Kimmel as the Education Principal and Defendant House as the Facility Grievance Coordinator. ECF No. 87 at 3, ¶¶ 13, 14. It appears the allegations against Defendants Kimmel and House are based on their involvement and denial of King's many grievances.  *Id.*, ¶¶ 95, 173, 285.

The Corrections Defendants argue Defendants Kimmel and House should be dismissed because "the fact that an official receives and reviews a letter or request slip is insufficient to establish personal involvement." ECF No. 105 at 13.  *See Mearin,* 951 F. Supp. 2d at 782 ("the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct."); *see also Longo v. Trostle*, No. 24-1981, 2024 WL

19

4579250, at *2 (3d Cir. Oct. 25, 2024).  However, King repeatedly alleges *retaliation* by the Corrections Defendants, including the allegation his grievances were denied in retaliation for his engaging in protected activity.  Since King has implicated Defendants Kimmel and House in his retaliation claims, it is recommended the motion to dismiss Defendants Kimmel and House for lack of personal involvement be denied.

### c. The Facts of the TAC Are Insufficient to State A Plausible First Amendment Access to Courts Claim

The right of access to the courts derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[6] "It is well-established that prisoners have a fundamental constitutional right of access to the courts." *Roman v. Jeffes*, 904 F.2d 192, 197 (3d Cir. 1990) (citing *Bounds v. Smith*, 430 U.S. 817 (1977), *superseded by statute as stated in Brown v. Sage*, 941 F.3d 655 (3d Cir. 2019)).

To establish a denial of access to courts claim, a plaintiff must show: (1) "they suffered an 'actual injury' in that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim"; and (2) they have "no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (quoting *Christopher v.*

---

[6]    The right of access to the courts is an aspect of the First Amendment right to petition.  *See McDonald v. Smith*, 472 U.S. 479, 482 (1985).  Also, "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974) (*overruled by Thornburgh v. Abbott*, 490 U.S. 401 (1989)).

*Harbury*, 536 U.S. 403, 415 (2002)).  The complaint must "describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'"  *Id*. (quoting *Christopher*, 536 U.S. at 416-17).

According to the TAC, Defendant Haluska violated King's First Amendment access-to-courts rights by (1) denying him use of the library and (2) terminating his use of the library copying machine.  ECF No. 87, ¶¶ 66-69, 90.  He asserts Defendants Depasquale and Adams[7] violated his First Amendment access-to-courts rights by seizing, discarding, and removing discovery documents.  *Id*., p. 35.  And that Defendant Calloway violated his First Amendment access-to-courts rights by not timely submitting documents to the Court and delaying civil action, and Defendants Calloway and Holloway removed and discarded his initial Section 1983 complaint exhibits.  *Id*.

King does not allege he lost a chance to pursue a nonfrivolous or arguable underlying claim as a result of Defendants' actions.  As a result, he has failed to plausibly plead the conduct of Defendants Haluska, Depasquale, Calloway, or Holloway prevented him from pursuing a non-frivolous or arguable underlying

---

[7]    The Court notes the caption of the TAC does not include any individual named "Adams" and "Adams" is not identified as a party in the TAC.  *See* ECF No. 87 at 2-3.  Similarly, the TAC also states Security Department Officials John Does #1, #2, #3, and #4, Ms. Schaup, and Captain DiSilva violated King's First Amendment rights.  *Id*.  Yet the caption of the TAC does not include any individuals identified as Security Department Officials John Does #1, #2, #3, and #4, Ms. Schaup, or Captain Silva, and none of these individuals are identified as parties in the TAC.  *Id*.  Under Rule 10 of the Federal Rules of Civil Procedure, "[t]he title of the complaint must name all the parties[.]"

claim.  Accordingly, it is recommended King's denial of access to the courts claim be dismissed without prejudice and King be granted leave to amend.

### d.  The First Amendment Retaliation Claims

Although not explicitly stated, it appears King is attempting to bring a First Amendment retaliation claim against certain Corrections Defendants, including Kimmel, House, Bright, Harry, Rusnak, Pearce, Holloway, Regina, Burkholder, Dix, Halusak, and Trafficante.  *See* ECF No. 87.  To the extent King may also be asserting a First Amendment retaliation claim against Corrections Defendants Matiyasic and Depasquale, the Corrections Defendants are not challenging such claims at this juncture.  ECF No. 105, n. 3.

To state a § 1983 retaliation claim, a plaintiff must allege (1) the conduct which led to the retaliation was constitutionally protected, (2) plaintiff was subject to adverse actions by a state actor, and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action.  *See Mt. Healthy City Sch. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *see also Alexander v. Fritch*, 396 F. App'x 867, 871 (3d Cir. 2010).

King asserts the TAC "details and alleges Defendants pattern of retaliation for his participation in protected conduct, numerous instances of spoilation, censorship, illegal seizures, withholding Pa DOC authorized outside purchases, interference with privileged communications, substandard medical and psychiatric care."  ECF No. 113 at 4.  The Correction Defendants do not contest the TAC

adequately pleads King engaged in protected conduct.  What the Corrections Defendants do contest though, is that the TAC fails to state plausible retaliation claims because there often are no allegations identifying the adverse actions taken by a discrete defendant or that King's protected activity was a substantial motivating factor in a Corrections Defendant's alleged decision to take adverse action. ECF No. 105 at 17-20. In particular, the Corrections Defendants argue King has failed to state a plausible claim for retaliation against Corrections Defendants Kimmel, House, Bright, Harry, Rusnak, Pearce, Holloway, Regina, Burkholder, Dix, Halusak, and Trafficante.  *Id.* These arguments are addressed in turn.

### i.  Defendants Kimmel and House

The Corrections Defendants argue King has failed to sufficiently plead a claim of retaliation against Defendants Kimmel and House because "a retaliation claim generally cannot be based off a grievance or lawsuit filed against another person."  ECF No. 105 at 19.  But as noted above, King alleges Defendants Kimmel and House denied his grievances in *retaliation* for his engaging in protected activity. It is well settled "[g]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).  Since King has implicated Defendants Kimmel and House in his retaliation claims, it is recommended the motion to dismiss the retaliation claims against Defendants Kimmel and House be denied.

23

### ii.  Defendants Bright, Harry, Rusnak, and Pearce

As to Defendants Bright, Harry, Rusnak, and Pearce, the undersigned agrees with the Corrections Defendants that the TAC fails to include any allegations identifying the specific adverse actions these Defendants took against King.  As such, King has failed to plead a plausible claim for retaliation against Defendants Bright, Harry, Rusnak, and Pearce.  Accordingly, it is recommended King's retaliation claims against Defendants Bright, Harry, Rusnak, and Pearce claim be dismissed without prejudice and King be granted leave to amend.

### iii.  Defendants Holloway, Regina, Burkholder, Dix, Haluska, and Trafficante

As to Corrections Defendants Holloway, Regina, Burkholder, Dix, Haluska, and Trafficante, the TAC contains allegations these Defendants retaliated against King in a number of ways;[8] however, as the Corrections Defendants correctly note the TAC is void of any allegation showing a causal link between King's protected activity and each of these Defendant's knowledge of his protected activity. ECF No. 105 at 19-20. As such, King has failed to plead a plausible claim for retaliation against Defendants Holloway, Regina, Burkholder, Dix, Haluska, and Trafficante. Accordingly, it is recommended King's retaliation claims against Defendants

---

[8]      For example, King asserts Defendant Holloway removed and discarded his initial federal complaint; Defendants Regina, Burkholder, and Dix refused to protect him from known threats by fellow prisoners; Defendant Haluska denied him access to the library and terminated his copier usage, and Defendant Trafficante confiscated a book King had ordered.  *See* ECF No. 87, ¶¶ 67-69, 90-94; 184-185.

Holloway, Regina, Burkholder, Dix, Haluska, and Trafficante be dismissed without prejudice and King be granted leave to amend.

### e. The Facts of the TAC Are Insufficient to State a Claim for A Fourth Amendment Violation

The TAC states Defendants Depasquale and Adams[9] "violated multiple Constitutional Rights of plaintiff by seizing, discarding and removing 'Discovery' documents numbering several hundred without Due Process, also violating his FIRST and FOURTH AMENDMENT protections." ECF No. 87 at 35.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated, and no Warrants, shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

The undersigned understands King to be raising a Fourth Amendment claim based on the seizure of his documents. Still, he has not stated a plausible claim under the Fourth Amendment because "prisoners have no legitimate expectation of privacy and [ ] the Fourth Amendment's prohibition on unreasonable searches [and seizures] does not apply in prisoner cells." *Hudson v. Palmer*, 468 U.S. 517 (1984); *see also Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The defendants correctly

---

[9]     Again, the Court notes the caption of the TAC does not include any individual named "Adams" and "Adams" is not identified as a party in the TAC. *See* ECF No. 87 at 2-3.

assert that prisoners do not have a Fourth Amendment right to privacy in their cells." (citing *Hudson*, 468 U.S. at 529).

As King's claim fails to state a constitutional claim, it is recommended King's Fourth Amendment claim be dismissed with prejudice and leave to amend be denied as futile.

### f. The Facts of the TAC Are Insufficient to State Plausible Eighth Amendment Claims for Conditions of Confinement

To establish an Eighth Amendment violation for conditions of confinement, "an inmate must allege both an objective element – that the deprivation was sufficiently serious – and a subjective element – that a prison official acted with a sufficiently culpable state of mind, i.e., deliberate indifference." *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996); *see also Young v. Quinlan*, 960 F.2d 351, 360-61 (3d Cir. 1992) (describing deliberate indifference as occurring when an official knows or should have known of a sufficiently serious danger to an inmate) (superseded by statute on other grounds as stated in *Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000).

Throughout the TAC, King alleges he was routinely subjected to unconstitutional conditions of confinement. Page 42 of the TAC summarizes his

26

conditions of confinement claims as follows:

> The conditions of confinement include year round extremely cold cell temperatures, lack of clean circulating air, the exhaust vents of the cells are not routinely cleaned - if ever. Nutritional servings do not meet Daily Recommended Allowances: portion sizes and food group representations are not met, six ounces of juice; usualy FRUIT PUNCH is served once every seven days, some meals are served with fruit, usualy three ounces of canned and in heavy syrup variations and when fresh fruit is provided it is unrippened and takes about four days to be edible.

> Lack of sanitation: the issue was used by Unit Manager/Defendant Keith Matiyasic in retaliation for participating in protected conduct. UM Matiyasic denied plaintiff a spray bottle, which all inmates were permitted one per cell to sanitize and regularly maintain during the pandemic years, SCI-Fayette E housing unit collected them on June 7, 2024. Plaintiff repeatedly requested and was each time denied, even submitted a Grievance in which Unit Manager/Defendant Palmer, a supervisory level official, vested authority to end the violation of plaintiff's FIRST AMEADMENT and equal protection rights, continued the violation in her grievance Initial Review Response, by approximately another forty-five days, at which time Plaintiff's Appeal of Grievance to Facility Manager was GRANTED in part and UM Matiyasic ORDERED to provide plaintiff a spray bottle. It remains the sole instance, to the best of plaintiff's memory; that any of the sixty-one filed grievance at SCI-Fayette (all DENIED) was ever reversed (if only in part) at the Facility Manager level of Appeal and never upon Finality.

ECF No. 87 at 42. While each of the concerns expressed by King in the TAC are included in the Eighth Amendment's protections, his conditions of confinement claims suffer from the same infirmities as his retaliation claims. As the Corrections

27

Defendants correctly point out, King's allegations lack the requisite specificity to meet minimum pleading requirements. ECF No. 105 at 21. There are no factual allegations "setting forth particularized descriptions of actions" taken by discrete defendants responsible for the conditions of which he complains or which defendants were aware of the conditions and chose to ignore them. *See Garrett,* 938 F.3d at 94. For example, King contends he

> repeatedly informed RHU officers that the toilet in his cell L-C 1009 had low water pressure insufficient to flush the waste and toilet tissue[,] he continued advising RHU staff for the next four days that the commode was backing up; waste and excrement flowing into the toilet and . . . was at risk of overflowing . . . on April 4, 2022, Plaintiff was relocated to Cell L-C 2012.

ECF No. 87, ¶¶ 45-51. Such broad and conclusory allegations are insufficient as they are made against unnamed RHU officers and RHU staff and not against any one defendant. As a result, King's allegations lack specificity and he has thus failed to state a plausible claim for relief.

As to the allegation Defendant Matiyasic denied him a spray bottle to sanitize his cell, King has not alleged how this condition created a substantial risk or serious harm or that any such alleged deliberate indifference by Defendant Matiyasic caused him any harm.

For all these reasons, it is recommended King's Eighth Amendment conditions of confinement claims be dismissed without prejudice and King be granted leave to amend.

28

### g. The Facts of the TAC Are Insufficient to State a Plausible Eighth Amendment Claim for Failure to Protect

A prisoner has a "right to be protected from constant threats of violence and sexual assault from other inmates[.]" *Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985). To state an Eighth Amendment failure-to-protect claim against a prison official, the prisoner must allege facts that plausibly support "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (abrogated on other grounds as recognized by *Fisher v. Hollingsworth,* 115 F.3d 352, 371 (3d. Cir. 2012).

King contends upon his arrival at SCI-Fayette, he immediately informed prison officials that prior to his transfer he had signed a "Protective Custody Unit Acknowledgement." ECF No. 87, ¶ 27. And despite signing such an acknowledgement, he was informed upon his arrival at SCI-Fayette there was no such unit at that institution and King was instead placed in the RHU for approximately seven weeks while the Security Department determined whether it was safe for him to be released into general population. *Id.*, ¶¶ 27-29. He also contends he "repeatedly, for nearly four years, periodically requested 'separations' from inmates which were each time denied or went unanswered." ECF No. 113 at 7. King alleges "Defendants" acted with deliberate indifference in "deciding not to issue 'separations.'" ECF No. 113 at 5.

29

The TAC does not explicitly state King is asserting a failure-to-protect claim. But construing the allegations of the TAC liberally, in light of *Haines v. Kerner*, 404 U.. 519 (1972), it can be construed he is asserting a failure-to-protect claim against Corrections Defendants Dix, Burkholder, and Regina, for failing to protect him from known threats posed by fellow prisoners. ECF No. 87 at 43, ¶ 4.[10] However, the TAC does not allege facts to support a finding that Defendants Dix, Burkholder, Regina, or any other Corrections Defendant were aware of any threats made to King or that they disregarded a substantial risk to his safety. His conclusory allegations of risk and knowledge are insufficient to state a plausible failure to protect claim against Corrections Defendants Dix, Burkholder, and Regina.

Similarly, King's assertions the Corrections Defendants were deliberately indifferent to his safety by failing to impose a separation order similarly fails to support a plausible failure-to-protect claim. *See* ECF No. 113 at 5 ("prison officials conduct; their acts and omissions in deciding not to issue 'separations' with deliberate indifference."). Once again, King fails to identify discrete defendants responsible for issuing separation orders or which defendants failed to exercise necessary care to protect his safety.

---

[10]     King contends he was "concerned and afraid" inmates [names omitted by Court]  and/or others may at some point, transfer to SCI-Fayette, inmates whom had repeatedly made threats to harm or kill him because they were family members of the 'victim' in the case responsible for his incarceration currently." ECF No. 87 at 50, ¶ 28. He contends he saw a family member of the victim working in SCI-Fayette Barber Shop. *Id.*, ¶ 31. King reported his concerns to Lt. Burgess, the Security Captain, who is not a defendant here. *Id.*, ¶¶ 29–37.

Thus, it is recommended the failure to protect claims be dismissed without prejudice and King be granted leave to amend.

### h. King's Fourteenth Amendment Due Process Claim is Barred by the Single Source Rule

It is unclear what claims King is attempting to bring under the Fourteenth Amendment due process clause.  There is a reference to "deprivation of property," but it is unclear if this relates to the "seizing, discarding, and removing of discovery documents" by Corrections Defendant Depasquale, ECF No. 87 at 35, or the denial of commissary paid-for items and outside publications, *id.*, ¶¶ 183-198.

To the extent any due process claim "is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Betts v. New Castle Youth Dev. Ctr.,* 621 F.3d 249, 260 (3d Cir. 2010) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).  Thus, to the extent King's Fourteenth Amendment due process claims arise from the same factual allegations underlying his First Amendment retaliation claims, he does not have standalone claims under the Fourteenth Amendment.  It is thus recommended King's Fourteenth Amendment claims be dismissed without prejudice and King be granted leave to amend.[11]

---

[11]     King may also be attempting to bring a First Amendment censorship claim based on the denial of his mail and certain publications. *See* ECF No. 113 at 8-9.  It is recommended King be granted leave to develop this claim in a Fourth Amended Complaint.

31

### 3.    The Motion for Spoliation Sanctions, ECF No. 108

Lastly, King also filed a motion for spoliation sanctions alleging Defendants failed to preserve evidence relevant to this case during a cell search outside his presence.  He asserts,

> Prisoner officials, fully aware of their legal affirmative Duty-to-Preserve and of active litigation in two separate matters, proceeded in conducting cell searches and leaving every document plaintiff has been permitted to process in a heap on the concrete floor.  Agents of the Pa DOC CERT team and SCI-Fayette personnel dumped out the contends of thirty-two manila envelopes, fifteen folders, work product previously on the cell's desk and the steel top bunk without a mattress.  All book marks inside the legal reference books were removed.  The approximately fifty plastic Sheet Protectors also were emptied.  Absent is the two sided, Court provided THIRD AMENDED COMPLAINT and several pages of Defendants' Brief in Support and Motion to Dismiss.

ECF No. 118 at 4.[12]  Notably, King also states while he had legal property exemption authorizations in two separate pending cases, for a total of three boxes, "*[a]n exemption for this case was denied by [Unit Manager] Ms. Luster.*"  *Id*. at 2 (emphasis added).  As sanctions he seeks (1) the dismissal of Defendants' motion to dismiss in its entirety; (2) appointment of counsel; (3) leave to amend complaint, (4) bar any motion for summary judgment from Defendants, and (5) additional relief the Court deems appropriate.  *Id*. at 7.  While the Corrections Defendants deny all

---

[12]    King does not indicate when this event occurred other than stating it occurred "when his cell was searched outside his presence, while detained in the R&D strip cage, five hours after filing a PREA notification on Defendant Officer Regina[.]"  ECF No. 118 at 3.

King's allegations, ECF No. 124, n.1, they argue the motion should be dismissed as premature as "a complete factual record does not exist[.]" *Id*. at 3.

"Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). Whether to impose sanctions is within the Court's sound discretion. *Bozic v. City of Washington, Pa.*, 912 F. Supp. 2d 257, 266 (W.D. Pa. 2012). If it is determined that spoliation of evidence has occurred, the Court must determine an appropriate sanction. *GN Netcom, Inc. v Plantronics, Inc.,* 930 F.3d 76, 82 (3d Cir. 2019) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994); *see also Bull,* 665 F.3d at 74 n. 5 (quoting *Schmid*).

The undersigned concludes a finding of spoliation is not warranted and recommends the motion for spoliation sanctions be denied. First, it is not clear King's documents in this case were actually destroyed. According to King, his documents were taken out of envelopes and folders and dumped onto his cell floor and bookmarks were removed from legal reference books, but he does not contend his documents were actually destroyed.[13] ECF No. 118 at 3. Further, while King

---

[13]    King does contend initial discovery documents produced in a separate lawsuit by the Office of the Attorney General were thrown in the toilet by the Security Department prison officials and then "the entire contends of one Legal Property Exemption box was discarded by a Supervisor level SCI-Fayette prison official, defendant Sgt. Pasquale and a subordinate." ECF No. 118 at 3. King does not state when this event occurred.

contends his TAC and several pages of the Corrections Defendants' motion to dismiss and brief were "absent," *id.* at 4, he does not dispute the Corrections Defendants remailed him those documents.  ECF No. 124 at 4.[14]  King cannot show the conduct of any Defendant in this action resulted in an actual injury to him in this case.

Nor is there evidence the Corrections Defendants acted in bad faith.  In determining bad faith, courts look to circumstantial evidence to determine intent, including "the timing of the destruction, whether there was selective preservation, and what preservation policies the party had in place."  *Donofrio v. Ikea US Retail, LLC*, Civil Action Nos. 18-599, 2024 WL 1998094, at *28 (E.D. Pa. May 6, 2024).  The documents were discovered during a cell search and, by King's own admission, he did not have an exemption for this material to be maintained in his cell.

Because there is no evidence of bad faith or prejudice, it is recommended King's motion for spoliation sanctions be denied.

---

[14]    King responded to the motion to dismiss on 12/22/2025, seven days before he filed the instant motion for spoliation sanctions.  ECF No. 118.

## III.    Conclusion

For the above reasons, it is respectfully recommended the motion to dismiss be granted in part and denied in part as most of King's constitutional claims fail to state a claim:

| Claims Sought To Be Dismissed | Against | Recommendation |
|---|---|---|
| Official Capacity Claims | All Corrections Defendants | Motion to dismiss be granted and § 1983 official capacity claims for money damages be dismissed **with** prejudice as such claims are barred by the Eleventh Amendment.  It is further recommended that leave to amend be denied. |
| Personal Involvement of Several Corrections Defendants | Bright, Harry, Rusnak, and Pearce | Motion to dismiss be granted as to Defendants Bright, Harry, Rusnak, and Pearce as the TAC is void of specific factual allegations.  It is recommended TAC be dismissed **without** prejudice and King be granted leave to amend. |
|  | Holloway, Regina, Burkholder, and Dix | Motion to dismiss be granted as to Defendants Holloway, Regina, Burkholder, and Dix as the TAC is void of specific factual allegations.  It is |

35

| | | recommended TAC be dismissed **without** prejudice and King be granted leave to amend. |
|---|---|---|
| | Walker | Motion to dismiss be granted to the extent King is attempting to hold Superintendent Walker liable as a supervisor.  It is recommended the TAC be dismissed **without** prejudice and King be granted leave to amend. |
| | Kimmel and House | Motion to dismiss be denied. |
| First Amendment Claims – Right of Access to Courts | Haluska, Depasquale, Calloway, and Holloway | Motion to dismiss be granted as King has failed to plead Defendants' conduct prevented him from pursuing a non-frivolous or arguable claim.  It is recommended the TAC be dismissed **without** prejudice and King be granted leave to amend. |
| First Amendment Claims - Retaliation | Kimmel and House | Motion to dismiss be denied as King has implicated Kimmel and House denied his grievances in retaliation for his protected activity. |
| | Bright, Harry, Rusnak, and Pearce | The motion to dismiss be granted as the TAC fails |

| | | |
|---|---|---|
| | | to include any allegations identifying the specific adverse actions taken by these Defendants against King.  It is recommended the TAC be dismissed **without** prejudice and King be granted leave to amend. |
| | Holloway, Regina, Burkholder, Dix, Haluska, and Trafficante | The motion to dismiss be granted as the TAC fails to include any allegations showing a causal link between King's protected activity and these Defendants' knowledge of his protected activity.  It is recommended the TAC be dismissed **without** prejudice and King be granted leave to amend. |
| Fourth Amendment Claims | Sgt. DePasquale | The motion to dismiss be granted and King's Fourth Amendment claims be dismissed **with** prejudice and leave to amend be denied as futile. |
| Eighth Amendment – Conditions of Confinement Claims | All Corrections Defendants | The motion to dismiss be granted as the TAC lacks the requisite specificity to meet minimum pleading requirements to allege Eighth Amendment conditions of confinement claims.  It is recommended the TAC be dismissed |

| | | without prejudice and King be granted leave to amend. |
|---|---|---|
| Eighth Amendment – Failure to Protect Claims | Dix, Burkholder, Regina, and unnamed Corrections Defendants | The motion to dismiss be granted as the TAC does not allege facts to support a finding that Dix, Burkholder, or Regina, or any other Corrections Defendant, were aware of any threats to King or disregarded a substantial risk to his safety.  It is recommended the TAC be dismissed **without** prejudice and King be granted leave to amend. |
| Fourteenth Amendment Due Process Claims | All Corrections Defendants | The motion to dismiss be granted and King's Fourteenth Amendment due process claims be **with** prejudice under the single source rule.  It is further recommended leave to amend be denied as futile. |

Giving deference to the allegations in King's pro se Third Amended Complaint, it is recommended King be granted leave to file a Fourth Amended Complaint that meets the standards of Federal Rule of Procedure 8 and cures the pleading deficiencies as noted in this Report and Recommendation.  King should be instructed he cannot include any claim in his Fourth Amended Complaint that has been dismissed with prejudice.

It is also recommended King's motion for spoliation sanctions be denied as King has not met his burden with respect to the requested spoliation sanctions.

Any party is permitted to file written specific Objections to this Report and Recommendation to the assigned United States District Judge.  In accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b)(2), and LCvR 72.D.2, King, because he is a non-electronically registered party, must file written objections, if any, to this Report and Recommendation by **June 1, 2026**.  The Correction Defendants, because they are electronically registered parties, must file objections, if any, by **May 27, 2026.**  The parties are cautioned that failure to file Objections within this timeframe "will waive the right to appeal." *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011) (quoting *Siers v. Morrash*, 700 F.2d 113, 116 (3d Cir. 1983). *See also Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) (describing standard of appellate review when no timely and specific objections are filed as limited to review for plain error).

DATED this 12th day of May, 2026.

BY THE COURT:

s/Christopher B. Brown
Christopher B. Brown
United States Magistrate Judge

cc:    SHAWN KING
       MM2246
       SCI PHOENIX
       1200 Mokychic Drive
       Collegeville, PA 19426
       (via U.S. First Class Mail)

       Margaret Potter
       PA Office of Attorney General
       (via ECF electronic notification)